## Commonwealth *v.* Clark, Appellant.

[Marked to be reported.]

*Criminal law—Perjury—Affidavit to support application for land warrant—Act of April 14, 1874—Act of April 23, 1889.*

An indictment under the act of April 14, 1874, P. L. 58, as amended by the act of April 23, 1889, P. L. 46, for making an alleged false affidavit to support an application for a land warrant, to the effect that the lands claimed

were unimproved, cannot be sustained, where it appears that there was no actual entry upon the land " with the manifest intention of making it a place of abode," as shown by the fact that there were no buildings on the land susceptible of occupancy as places of abode.

In such a case evidence that the land embraced in the application was cleared, fenced, used and occupied and held by defined boundaries for at least fifty years, is not sufficient to show that the occupants of the land ever defined the limits of their claim " by survey and well marked lines," as required by the act of April 23, 1889, P. L. 46.

*Affidavit knowingly false—Advice of counsel.*

Where the affidavit was made upon the advice of counsel that under the act of 1889 the land was unimproved, the affiant cannot be convicted of making a knowingly false affidavit.

Argued April 17, 1893.   Appeal, No. 134, July T., 1892, by defendant, B. F. Clark, from judgment of Q. S. Huntingdon Co., May T., 1891, No. 7, on verdict of guilty.   Before STERRETT, C. J., GREEN, MITCHELL, DEAN and THOMPSON, JJ.

Indictment for perjury under act of April 14, 1874, P. L. 58, in affidavit that land was unimproved.   Before FURST, P. J.

The facts appear by the opinion of the Supreme Court.

The affidavit made by defendant was to the effect that " to his certain knowledge the land described is unimproved."

The court charged in part as follows :

" The witnesses on the part of the commonwealth, not only the prosecutors, but other witnesses called, surveyors who have gone upon the land, have sworn to you that two thirds of the land embraced in this warrant surveyed to H. W. Petrikin, which is sworn to by Mr. Clark as being a warrant for unimproved land, is well settled, improved farms ; that there are various kinds of buildings upon the land ; that the garden of Mr. Griffith, or the greater portion of it, is on these 201 acres ; that, not only these buildings, but the schoolhouse of that district is built upon this tract of land, and school is held in that schoolhouse regularly ; and that Mr. Clark is a voter and has for years passed through this land in going to the place where elections in his district are held.   In addition to this testimony, there is other testimony on the part of the commonwealth, and for that matter on the part of some of the witnesses for the defendant, that there are old fences upon this land inclosing the fields.   One witness, Mr. Africa, testifies that there are

some fifteen or sixteen fields and seventeen fences which he crossed in making the survey. Other witnesses testify that there are several orchards upon this land, and that the land is cultivated regularly in grain and grass by these prosecutors. This is the burden of the testimony on the part of the commonwealth. Various witnesses have testified to that, and possibly portions of that testimony was given by witnesses of the defendant.

" [The defendant has called witnesses to prove that there is no dwelling on this particular piece of land. You will notice, in that connection—and I think it is something bearing upon the case—that the application of Mr. Petrikin for 75 acres referred to in this application, and also referred to in the defendant's testimony, embraces a little piece of land perhaps northeast of the 201 acres. All the witnesses who testified on the subject testified that the stone house of Mr. Griffith is on that piece of land, which is termed vacant here ; and the defendant says that the stone house, therefore, is on the 75 acres and not on the 201 acres. Mr. Griffith, however, occupied that house as his home and dwelling ; he claimed and improved, or purchased the improvement from his predecessors, as early as in the fifties ; and his heirs since his death have occupied part of the same land. If his dwelling house be on the seventy-five acre piece, as contended by the defendant in his testimony, then I do not see how, by the separation of this land into two parcels, it could be said to the jury that the case does not fall within the principles of the law, because, by a similar application for a tract of land, this application puts the dwelling house on that ; and then he applies for the balance of this property as vacant land. I do not think it can be separated in that way. We must, in other words, regard that land just as it was at the time Mr. Petrikin's surveyor went there ; and just as it was when Clark made this affidavit.] [14] . . .

" [The act of 1889, referred to as being an amendment of the third section of the act of 1874, we think has no relation to the present case. We think that that relates to a controversy between persons, in the civil courts, where one person claims a piece of land and his claim is resisted by another who claims that he holds the land as improved land. Such a controversy is one arising between individuals in the civil courts or before

the board of property or the secretary of internal affairs. The law that governs this case is the second section of the act of 1874, and the first section with regard to the requirement of a disinterested witness to prove that the land was either improved or unimproved.] [15] The second section forbids the issuing of a warrant for any land which may be improved, occupied, settled upon or cleared, except to the improver or to his legal representative, which has been construed to be his vendee or his heirs. . . .

The defence in this case consists of the allegation that this defendant made this affidavit under the advice of counsel that it was unimproved land, while he was a resident of that township and knew that it was cleared and fenced, that orchards were growing there, and that this schoolhouse and certain other buildings were upon it. He says that, as there was no dwelling houses upon it occupied by any settler, he was therefore advised that it remained unimproved land. To support that defence he testifies that he had the act of assembly before him and conferred with counsel a short time prior to the making of this affidavit. You must remember that the affidavit was made on the 20th of June; and I think he testifies that he had the pamphlet laws or act of assembly at that time. You will recollect his testimony on that point. If that be true, then the question of law arises, whether or not he honestly made this affidavit under a false impression of the provision of the law relating to improvement titles."

Defendant's 4th point was as follows :

" Under all the evidence there can be no conviction." Refused. [18]

Verdict, guilty, and judgment thereon. Defendant appealed.

*Errors assigned* were (14, 15, 18) instructions, quoting them.

*R. B. Petrikin* and *John H. Orvis, H. W. Petrikin* with them, for appellant.—Under the acts of 1874 and 1889, and the law as it previously existed, what constituted an improvement was a question of law for the court. Improvement rights under these acts may be acquired : (1) By an actual entry. (2) With the intention to make it a place of abode. (3) By tilling and

clearing the soil for the purpose of gaining support. (4) By defining the limits of such claim by survey and well marked lines.

The commonwealth must show a conversion of the vacant lands of the commonwealth into an improvement by entire compliance with legal methods,—by whom made, when, how, and for what purpose.

*John M. Bailey, Geo. B. Orlady* and *Chas. G. Brown,* district attorney, for commonwealth.—All the evidence showed that the land embraced in the Petrikin application was cleared, fenced, used and occupied and held by defined boundaries for at least 50 years. There were buildings, orchards, a schoolhouse, fences and fields cleared and cultivated for many years. A stone dwelling house, barn, stables and other buildings used and occupied as a place of abode for the tillers of the soil and for storing the crops raised on a large portion of the lands embraced in the application, stood just on the verge of it.

The act of April 23, 1889, P. L. 46, has no relation to the case. Its title is, " An act to amend section three of the act approved the 14th day of April, 1874, entitled, " An act relative to the issuing of warrants to survey vacant land," providing for the payment of purchase money and fees due the commonwealth, and regulating the consideration of caveats filed against the granting of patents." It purports to be only an amendment of the third section of the act of 1874, and in no way affects the first and second sections of that act; neither is it inconsistent with them.

OPINION BY MR. JUSTICE GREEN, October 2, 1893 :

The affidavit upon which the indictment in this case was based was made on the 26th day of June, 1889. The indictment was founded upon the first section of the act of 14th April, 1874, P. L. 58, which provided that every applicant for a warrant to survey any of the vacant lands of this commonwealth shall produce to the surveyor general a particular description of the land applied for with an affidavit of a disinterested witness, made before a justice of the peace of the township or borough, etc., specifying whether the said land be improved or not, and if improved, how long since the said improvement was

made," etc. "And if at any time thereafter it shall appear that the person or persons deposing as aforesaid, or any of them, shall knowingly have sworn falsely, such person or persons shall suffer all the pains and penalties of perjury."

The defendant was charged with having committed perjury in making an affidavit, as a disinterested witness, under the first section of the act of 1874, in which affidavit he declared that a certain tract of land of 201 acres in Tod township, Huntingdon county, for which Harry W. Petriken had made application, was "unimproved." This declaration was alleged in the indictment to be false. The act of 1874 was amended by an act passed April 23, 1889, P. L. 46. The amendment was to the third section of the act of 1874, but it contained a proviso in the following words, "provided further that settlement and improvement rights shall only be acquired and recognized as such by an actual entry upon vacant land of the commonwealth, with the manifest intention of making it a place of abode, together with an actual improvement of the land by clearing and tilling the soil for the purpose of gaining support thereby, and also defining the limits of such claim by survey and well marked lines."

The defendant being indicted for the criminal offence of perjury, under the special terms of a statute, must be clearly shown to be guilty within those very terms. If they do not strictly embrace the clear facts of the case he cannot be convicted of the crime. We understand it to be conceded that there was no dwelling house, or place of abode, within the lines of the 201 acres for which the application was made. There were clearings, cultivation and fences, but no buildings susceptible of occupancy as places of abode. Now the act of 1889 provided that settlement and improvement rights could only be acquired by an actual entry upon vacant land " with the manifest intention of making it a place of abode." It seems to us that such an intention could only be made "manifest" by the erection and occupancy of "a place of abode." There was no such structure within these lines. This is not a trial of the title to the land and we do not now make, or intend to make, any deliverance on the question whether the improvement right claimed by the prosecutors was sufficient to include this 201 acres. But for the purposes of this criminal prosecution we

are of opinion that the improvement of the 201 acres, necessary to convict the defendant of perjury in his affidavit, must be an improvement within the requirements of the act of 1889 and must include all the essentials prescribed by that act.

Much stress is placed upon the fact that the defendant testified that he had seen the act of 1889 in the pamphlet laws of that year when he made the affidavit, and that this could not be true because the pamphlet laws for that year were not then issued.    It is not of the smallest possible consequence whether he had seen a copy of the pamphlet laws then or not.    The act of April 23, 1889, was the law of the commonwealth from that date, and if the defendant's affidavit was true, within the meaning of that law, he could not be convicted of perjury in making that affidavit.    Mr. Petriken explained in his testimony that he had a copy of the law before him when he advised with the defendant respecting the meaning of the law and the making of the affidavit, but not a copy of the pamphlet laws.    The affidavit on which the indictment was based merely alleged that the land was "unimproved," and the act of 1874 only requires that the affidavit of the disinterested witness shall specify whether the land applied for "be improved or not."

What was "improved" land in Pennsylvania on June 26, 1889, depended upon the description of that kind of land contained in the act of April 23, 1889.    Upon all the testimony in the present case it appears to us that this particular piece of 201 acres does not conform to that definition, and therefore the defendant could not be lawfully convicted of perjury for simply declaring in the affidavit in question that it was unimproved.

One of the deficiencies in the improvement title claimed by the prosecutors, as alleged by the defendant, is, that there was no "defining the limits of such claim by survey and well marked lines," as is required by the words of the act of 1889. Counsel for the defendant asserts that there was no such proof in the case.    Counsel for the prosecutors say there was evidence that "the land embraced in the Petriken application was cleared, fenced, used and occupied and held by defined boundaries for at least fifty years."    This is not an allegation that the prosecutors or their predecessors in the title ever defined the limits of their claim "by survey and well marked lines," as required by the act of 1889, and after having read the whole of

the testimony the writer is unable to find any such proof in the case. In this respect also, therefore, there is an apparent failure, on the part of the commonwealth, to establish the kind of improvement title that is required by the act of 1889 in order to make out the falsity of the defendant's affidavit.

We are therefore of opinion that the defendant's fourth point should have been affirmed and the jury directed to acquit the defendant. It is not necessary to notice the other assignments of error.

In addition to these considerations the affidavit of the defendant was made upon the advice of counsel that under the act of 1889 the land was unimproved, and therefore it cannot be said that the affidavit was knowingly false.

Judgment reversed, and it is ordered that the defendant go without day.

[Marked to be reported.]